CC-2001-216                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor Rios Moya<br>    Querellante-Peticionario | Certiorari |
| v. | 2001 TSPR 117 |
| Industrial Optics y/o<br>Centro Visual del Norte<br>    Querellado-Recurrido | 154 DPR \_\_\_\_ |

Número del Caso: CC-2001-216


Fecha: 21/agosto/2001


Tribunal de Circuito de Apelaciones:
                              Circuito Regional I


Juez Ponente:
                    Hon. Rodríguez Oronoz



Abogado de la Parte Peticionaria:
                    Lcdo. Aurimir Arocho Torres


Abogado de la Parte Recurrida:
                    Lcdo. José A. Roselló Camacho


Materia:


        Este documento constituye un documento oficial del
        Tribunal Supremo que está sujeto a los cambios y
        correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su
        distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor Ríos Moya

    Querellante-Peticionario

              v.                CC-2001-216        Certiorari

Industrial Optics y/o
Centro Visual del Norte

    Querellado-Recurrido

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 21 de agosto de 2001.

I

El Sr. José D. Valles Vargas y la Sra. María Y. Salas Gay eran propietarios de dos (2) establecimientos de optometría, y venta y distribución de espejuelos operados bajo el nombre comercial "Centro Visual del Norte" e "Industrial Optics", ubicados en los municipios de Manatí y Caguas, respectivamente (en adelante nos referiremos a dichas empresas de manera colectiva como "la parte recurrida").

Por su parte, el Sr. Héctor Ríos Mora (en lo sucesivo, "el peticionario") laboró como

optómetra licenciado en el "Centro Visual del Norte", de Manatí. Comenzó a laborar allí en agosto de 1994 hasta que fue cesanteado el 20 de abril de 2000.

Varias semanas luego de su despido, el 30 de junio de 2000, el peticionario presentó querella contra la parte recurrida por alegado despido injustificado, al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185(a) *et seq.* (en adelante, "Ley 80"); por falta de pago de vacaciones adeudadas, bajo la Ley Núm. 379 del 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 *et seq.* (en adelante, "Ley 379"); y al amparo de la Ley de Salario Mínimo, Ley Núm. 84 de 20 de julio de 1995, según enmendada, 29 L.P.R.A. sec. 245 *et seq.* (en adelante, "Ley 84"). Se acogió asimismo al procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq* ("Ley 2"). En el epígrafe nombró como parte querellada a "Industrial Optics y/o Centro Visual del Norte", indicando que dicha parte "es una entidad jurídica que opera en Puerto Rico un negocio de servicios de optometría, y venta y distribución de espejuelos, entre otras cosas . . .".[1]

Así pues, el Tribunal de Primera Instancia (TPI) expidió por separado una "Orden de Citación"[2] a "Centro Visual del Norte" y otra a "Industrial Optics Active Eyes", el 30 de junio de 2000.[3] Dicha orden

---

[1] Apéndice, pág. 21.

[2] La "Orden de Citación" al amparo de la sección 3 de la Ley 2, 32 L.P.R.A. 3120, sustituye, o viene a ser, el emplazamiento, en un proceso ordinario. Es decir, hace las veces del emplazamiento.

[3] Véase Apéndice, págs. 32-35.

Debemos señalar que dos meses después del despido del peticionario, el 20 de junio de 2000, el Sr. Valles Vargas y la Sra. Salas Gay firmaron un contrato titulado "Contrato de **Opción** a Compra" para venderle, *inter alia*, "las llaves" de las empresas mencionadas a una corporación doméstica con fines de lucro registrada bajo el nombre de "Servicios Visuales del Norte, Inc." (en adelante, "la corporación"). Véase Apéndice, pág. 43. **La corporación, por su parte, era propietaria y operaba un establecimiento de optometría llamado "Active Eyes", localizado en Plaza del Sol Mall, en el municipio de Bayamón.** Véase Apéndice, pág. 32. La corporación compareció al otorgamiento de dicho contrato a través de su presidente, el Sr. José Ángel Piña Álvarez, y su vicepresidente, el Sr. Carlos Javier Rodríguez Torres.

Aunque **no está en controversia ante nos dicho "contrato de opción"**, cabe señalar que, según surge del expediente, la contratación puso en efecto una especie de cesión de bienes a favor de la corporación sobre las

disponía que, conforme a la Ley 2, *supra*, cada querellada tenía la obligación de presentar contestación a la querella dentro de diez (10) días después de la notificación, si la misma se hiciere en el distrito judicial en que se promovió la acción, y dentro de quince (15) días en los demás casos. Ambas citaciones fueron diligenciadas el 19 de julio de 2000: la primera se diligenció en el centro de optometría "Active Eyes", localizado en Bayamón, y la segunda se diligenció en "Centro Visual del Norte" de Manatí donde laboraba el peticionario.[4]

Ahora bien, el Lic. José R. Rosselló Camacho, abogado laboral de la parte recurrida, se encontraba de vacaciones a la fecha de la citación, por lo cual no pudo atender la querella instada por el peticionario. En su lugar, lo representó provisionalmente el Lic. José R. Rosselló Reyes, quien compareció ante el tribunal el 24 de julio

---

propiedades en cuestión, con efecto retroactivo al 1 de enero de 2000. Apéndice, pág. 45. Cabe señalar, además, que como parte del acuerdo se incluyó en el contrato una cláusula de responsabilidad sucesoral mediante la cual específicamente se acordó que la corporación asumiría todas las obligaciones y responsabilidades de los establecimientos en cuestión, retroactivamente desde el 1 de enero de 2000.

Por último, debemos señalar que tanto la parte querellada-recurrida "Industrial Optics, Inc." como la corporación compradora, "Servicios Visuales del Norte, Inc.", son corporaciones domésticas con fines de lucro debidamente registradas, según indica el Registro de Corporaciones del Departamento de Estado. Es decir, ambas tienen personalidad jurídica conforme a derecho. Art. 27 del Código Civil, 31 L.P.R.A. sec. 101. Sin embargo, la entidad denominada "Centro Visual del Norte" en el epígrafe de la demanda no aparece registrada como una corporación en ésta jurisdicción. Conocido es que, **como regla general**, no se puede comparecer en carácter de parte a un proceso judicial a base de un nombre comercial. De manera que si un negocio no está incorporado, no puede designarse como parte en el pleito por carecer de personalidad jurídica, lo cual es

continúa...

... 3 continuación

determinada por ley. Véase R. Hernández Colón, *Derecho Procesal Civil* § 1101, pág. 101 (1997); véase una excepción a dicha regla en § 1114, *Ibid*; y véase además el caso de *León v. Restaurante El Tropical*, res. el 7 de junio de 2001, ___ D.P.R. ___, 2001 T.S.P.R. 81, 2001 J.T.S. 84, pág. 1327, en donde este Tribunal aclaró y enfatizó que la validez de una notificación "no queda en modo alguno amainada por el hecho de que en el epígrafe del emplazamiento se indique imperfectamente el nombre del demandado".

de 2000, mediante una moción titulada "Moción Interesando Prórroga y Comparecencia Especial" para "única y exclusivamente" solicitar una prórroga "no mayor de treinta (30) días para que el abogado que habrá de asumir la representación profesional del caso en su capacidad permanente, el Lcdo. Rosselló Camacho . . . pueda hacerse cargo del caso" cuando regresase de sus vacaciones el 31 de julio de 2000.[5] Asimismo acompañó con la moción una declaración jurada suscrita por el Sr. José Ángel Piña Álvarez en calidad de "representante autorizado de la parte querellada". Éste, a su vez, indicó que tenía autorización para "comparecer en la moción de prórroga como lo ha hecho el abogado en carácter especial en este caso".[6] Sin embargo, en ningún momento aclaró si la parte querellada se estaba sometiendo o no a la jurisdicción del tribunal.

No obstante, el 31 de julio de 2000, el TPI declaró sin lugar escuetamente la moción de prórroga, basándose en que se trataba de un procedimiento sumario bajo la Ley 2.[7] Ésta orden fue notificada el 4 de agosto de 2000. Empero, el día previo –esto es, el 3 de agosto— ya el peticionario había presentado una moción solicitando que se anotara rebeldía y que se dictara sentencia a su favor.[8]

Eventualmente, el Lic. Rosselló Camacho regresó de su receso el 31 de julio, y el 9 de agosto de 2000, presentó a nombre de la parte querellada tres (3) escritos ante el TPI, a saber: 1) una "Moción de Reconsideración", por haberse dictado sin lugar la solicitud de prórroga; 2) una "Moción de Desestimación", alegando que la parte querellada no era una persona jurídica, y que, por tanto, el tribunal carecía de jurisdicción; y 3) una "Contestación a la Querella".[9]

---

[4] Apéndice, págs. 32-35.

[5] Apéndice, pág. 25.

[6] Apéndice, pág. 27. La sección 3 de la Ley 2, *supra*, dispone que el juez tendrá discreción para prorrogar el término para contestar la querella "[s]olamente a moción de la parte querellada, la cual deberá notificarse al abogado en que se expongan bajo juramento los motivos que para ello tuviere la parte querellante o a ésta si compareciere por derecho propio, en que se expongan bajo juramento los motivos que para ello tuviere la parte querellada . . .". 32 L.P.R.A. sec. 3120.

[7] La orden dispuso: "SIN LUGAR. SE TRATA DE UN PROCEDIMIENTO SUMARIO". Apéndice, pág. 28.

[8] Apéndice, pág. 25.

[9] Apéndice, págs. 36, 41 y 47. Como se explicará *infra*, el último día hábil para que la parte querellada-recurrida presentara su contestación a la querella era el 3 de agosto de 2000.

El 17 de agosto de 2000 el TPI dictó orden declarando "ha lugar" tanto la anotación de rebeldía como la querella presentada por el peticionario. La misma fue notificada el 25 de agosto de 2000.[10]

No obstante, el 6 de septiembre de 2000, la parte querellada presentó un escrito mixto de reconsideración y/o relevo de sentencia titulado "Moción de Relevo de Sentencia al Amparo de la Regla 49.2 de las de Procedimiento Civil y la sección 3124 del Procedimiento Sumario, de Reconsideración, y Solicitud de Señalamiento de Vista".[11]

Por su parte, el 14 de septiembre de 2000 el TPI declaró sin lugar la moción de reconsideración presentada por la parte recurrida el 9 de agosto, y sostuvo, a su vez, que la moción de desestimación presentada por ésta se había tornado "académica".[12] Dicha orden fue notificada el 22 de septiembre de 2000.

El **25 de septiembre de 2000**, el TPI dictó una segunda orden, **notificada el 28 de septiembre**, declarando "no ha lugar" el escrito de la parte querellada presentado el 6 de septiembre de 2000, el cual había titulado "Moción de Relevo de Sentencia al Amparo de la Regla 49.2 de las de Procedimiento Civil y la sección 3124 del Procedimiento Sumario, de Reconsideración, y Solicitud de Señalamiento de Vista".[13] Es decir, el TPI **declaró sin lugar la Moción de Relevo de Sentencia y/o Reconsideración**. [14]

El 4 de octubre de 2000 la parte recurrida sometió ante el TPI "Moción Solicitando Vista". Sin embargo, acto seguido —y sin que el TPI hubiese resuelto la solicitud de vista— el 30 de octubre de 2000, la parte recurrida presentó ante el Tribunal de Circuito de Apelaciones (TCA) solicitud de *certiorari* y Moción en Auxilio de Jurisdicción solicitándole, en síntesis, que "revoque la Resolución u Orden del Tribunal de Primera Instancia . . . de fecha 25 de septiembre de 2000 . . . la cual declaró No Ha Lugar a la Moción de Relevo de Sentencia . . . y por consiguiente, deje sin efecto la Sentencia que dictó el

---

[10] Apéndice, págs. 50-56.

[11] Apéndice, pág. 57. Asimismo, se anejó a dicha moción una declaración jurada suscrita por el Sr. Carlos J. Rodríguez Torres, optómetra, y vicepresidente de la corporación, actual dueña de la parte querellada. Apéndice, págs. 43 y 67.

[12] Apéndice, pág. 88.

[13] Apéndice, pág. 89.

Tribunal de Primera Instancia, de fecha 17 de agosto de 2000 . . .".[15] No obstante, el 24 de octubre de 2000, el TPI dictó orden para **reiterar** su rechazo **a la solicitud de relevo de sentencia** y para denegar además la **solicitud de vista**. Ésta fue debidamente notificada el 1 de noviembre, es decir, al siguiente día de haber presentado la parte recurrida su solicitud de *certiorari* ante el TCA.[16]

Asimismo el foro de instancia notificó **por segunda vez**, el 1 de noviembre de 2000, su rechazo a moción de la parte recurrida solicitando **reconsideración**.[17] Finalmente, el 16 de noviembre de 2000, el TPI notificó su orden de 24 de octubre proveyendo no ha lugar a la moción solicitando vista presentada por la parte querellada.[18]

Así las cosas, el 29 de diciembre de 2000 el foro apelativo dictó "sentencia"[19] revocatoria, siendo ésta notificada el 10 de enero de 2001. Dicho tribunal indicó en su dictamen que, a pesar de que "resulta evidente que la etapa del procedimiento en que se nos presenta el caso no es la más propicia para su consideración", concluyó que **el TPI aún no había "resuelto la moción de relevo de sentencia presentada por el peticionario el 6 de septiembre de 2000, ya que solamente resolvió la solicitud de reconsideración contenida en dicha moción"**. Ello, a pesar de que la parte allí peticionaria, aquí recurrida, reconoció en su escrito de *certiorari* que el foro *a quo* había denegado su moción de relevo, y ni siquiera había cuestionado dicho resultado. Sin embargo, el TCA **revocó la resolución dictada por el TPI el 25 de septiembre, y devolvió el caso al foro de instancia "para que resuelva dicha moción de relevo a la luz de la jurisprudencia y doctrinas aplicables"**.[20]

De esta sentencia acudió ante nos el peticionario el 19 de marzo de 2001 señalando la comisión de un error solamente; a saber:

> Erró el honorable Tribunal de Circuito de Apelaciones al revocar la determinación del Tribunal de Primera Instancia en ausencia de

---

[14] Así lo reconoce también la propia parte recurrida. Véase "Escrito Para Mostrar Causa" en autos, pág. 4, presentado ante nos el 31 de mayo de 2001.

[15] Apéndice, pág. 19.

[16] Apéndice, págs. 125-126.

[17] Apéndice, pág. 125.

[18] Apéndice, pág. 127.

[19] Mas bien, debió titularse "Resolución".

[20] Apéndice, pág. 146. Aparentemente, las partes nunca le informaron al TCA que el 1 de noviembre de 2000, el TPI **reiteró** que había denegado la moción de relevo de sentencia solicitada por la parte recurrida.

jurisdicción bajo el procedimiento sumario de reclamaciones laborales, puesto que los términos para revisar la determinación ya habían decursado.

Este Tribunal emitió una resolución el 20 de abril de 2001, concediendo un término de treinta (30) días a la parte recurrida para que mostrase causa por la cual no deberíamos expedir el auto solicitado y dictar sentencia revocatoria de la sentencia del TCA de 29 de diciembre de 2000. Según lo requerimos, la parte recurrida compareció el 31 de mayo de 2001, mediante un escrito titulado "Escrito Para Mostrar Causa".

No obstante, el 5 de junio de 2001, la parte recurrida volvió a comparecer mediante "Moción Informativa", indicando que durante la preparación de su Escrito Para Mostrar Causa "recibi[eron] una llamada telefónica de la oficina del Hon. Juez José M. Lorie Velasco solicitando[les] que preparara[n] un Proyecto de Resolución declarando Con Lugar la Moción de Relevo de Sentencia . . .". Ello, en vista de la reiterada norma de que la mera radicación de un recurso de *certiorari* ante un tribunal apelativo no paraliza los procedimientos ante el tribunal inferior. Por tanto, el 18 de mayo de 2001, la parte recurrida radicó el Proyecto de Resolución solicitado.

El 15 de junio de 2001, compareció nuevamente la parte recurrida mediante "Moción Informativa" indicándonos que el TPI ya había dictado una nueva resolución declarando finalmente la procedencia de la solicitud de relevo de sentencia. Ello, a pesar de que dicha solicitud había sido rechazada en dos ocasiones previamente. En otras palabras, esta última actuación del foro de instancia tuvo el efecto práctico de dejar sin efecto la Sentencia dictada en rebeldía en contra de la parte recurrida del 15 de agosto de 2000. Tuvo el efecto también de reconsiderar las dos denegatorias previas: la del 25 de septiembre y la del 24 de octubre de 2000.

Oportunamente, compareció ante nos el peticionario el 22 de junio de 2001 mediante moción en auxilio de nuestra jurisdicción, solicitando que los procedimientos ante los tribunales inferiores fuesen paralizados. El 27 de junio de 2001, declaramos con lugar dicha solicitud. Estamos en posición de resolver.

## II

Hemos reiterado en un sinnúmero de ocasiones que la Ley 2 establece un procedimiento sumario para los casos de reclamaciones instadas por obreros y empleados contra sus patronos por servicios

prestados, respondiendo a la política pública clara e inequívoca establecida por el Estado de abreviar dicho procedimiento, de manera que sea lo menos oneroso posible para el obrero. *Dávila, Rivera v. Antilles Shipping, Inc.*, res. el 12 de febrero de 1999, 147 D.P.R. __, 99 T.S.P.R. 12, 99 J.T.S. 10.

De igual forma, hemos enfatizado vez tras vez que la esencia y médula del trámite fijado por dicha Ley constituye precisamente el procesamiento sumario y expedito. Santiago v. *Palmas del Mar Properties, Inc.*, 143 D.P.R. 886, 891 (1997); *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499 (1997); *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. 912 (1996); *Mercado Cintrón v. Zeta Com., Inc.*, 135 D.P.R. 737 (1994); *Resto Maldonado v. Galarza Rosario*, 117 D.P.R. 458 (1986); *Díaz v. Hotel Miramar Corp.*, 103 D.P.R. 314, 316 (1975). En otras palabras, la naturaleza sumaria del procedimiento establecido en esta sección constituye su característica esencial. *Srio. del Trabajo v. J.C. Penny Co., Inc.*, 119 D.P.R. 660 (1987).

Asimismo, las normas establecidas en dicha Ley lo que intentan es evitar que el patrono dilate innecesaria y viciosamente los procedimientos judiciales, sin negar una pronta y justa solución para ambas partes. *León v. Restaurante El Tropical*, *supra*, pág. 1325; *Rivera v. Insular Wire Products Corp.*, *supra*, pág. 923.

En el pasado hemos insistido también que "[e]l hecho de que en ocasiones las circunstancias especiales de algún caso particular requieran alguna flexibilidad en la aplicación de la Ley Núm. 2 . . . de ningún modo nos da carta blanca para soslayar en cualquier caso el inequívoco y mandatorio precepto de rapidez en el trámite judicial estatuido en dicha ley. De ordinario, no tenemos otra alternativa que no sea la rigurosa aplicación de los términos taxativos de la Ley Núm. 2. Sólo en casos excepcionales, cuando median circunstancias especiales, podemos ser más flexibles". *Mercado Cintón v. Zeta Com., Inc., supra*, pág. 742.

Ahora bien, la sección 3 de la referida Ley 2 dispone en parte que una vez presentada la querella, la parte querellada deberá radicar su contestación por escrito, "dentro de diez (10) días después de la notificación, si ésta se hiciere en el distrito judicial en que se promueve la acción, y dentro de quince (15) días en los demás casos, y apercibiéndole, además, que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle". 32 L.P.R.A. sec. 3120.

Por su parte, la sección 4 de la Ley 2 dispone en parte pertinente que:

> **Si el querellado no radicara contestación a la querella** en la forma y **en el término dispuesto** en la sección 3120 de este título, **el juez dictará sentencia contra la parte recurrida, a instancias del peticionario,** concediendo el remedio solicitado. En este caso dicha sentencia será **final** y de la misma <u>**no podrá apelarse**</u>; Disponiéndose, sin embargo, que la parte recurrida **podrá** acudir del Tribunal . . . correspondiente . . . en que se haya originado la reclamación al Tribunal [de Circuito de apelaciones], **dentro de los diez (10) días siguientes a la notificación de la sentencia** para que se revisen los procedimientos. 32 L.P.R.A. sec. 3121. (Énfasis suplido.)

Conforme a la sección 4 citada anteriormente, la regla general es que, en los casos en que un querellado no conteste la querella en su contra en la forma y en el término dispuesto por ley —es decir, en querellas dictadas en rebeldía— el juez dictará una sentencia que será **final** y la misma **no podrá apelarse**. La razón es conocida: el propósito fundamental de la Ley 2 es viabilizar un procedimiento sumario a favor de los ciudadanos que evite toda dilación judicial en el reclamo de sus derechos laborales. No obstante, dicha sección establece el derecho de recurrir en alzada solamente si es "para que se revisen los procedimientos", que significa, en otras palabras, que dicha revisión es una limitada a cuestiones exclusivamente procesales. *Santiago v. Palmas del Mar Properties, Inc., supra*, págs. 894 y 901.[21] De modo que toda determinación sobre derechos sustantivos no es revisable si la sentencia se dictó en rebeldía. *Id.* Además, dicha revisión debe solicitarse **dentro de un término sumario de diez (10) días siguientes a la notificación de la sentencia dictada en rebeldía**. *Id.*

No hay duda de que el trámite ante el TPI en el caso de autos fue complicado. Sin embargo, a poco uno examine y analice con detenimiento la secuencia de eventos procesales acaecidos en dicho foro, se percatará de que, conforme a lo dispuesto en la Ley 2, la primera fecha clave fue cuando se notificó la copia de la querella u "Orden de Citación", es decir, el 19 de julio de 2000. Ese día el TPI adquirió jurisdicción sobre la parte querellada-recurrida, y en ese momento comenzó a transcurrir el término dispuesto por la Ley 2 para contestar la querella.

---

[21] Indicamos en el caso de *Santiago, supra*, que en estos casos el recurso apropiado para lograr dicha revisión es el *certiorari*, que es un recurso discrecional, y no la apelación, el cual es obligatorio. *Id.*, págs. 902 y 904.

La segunda fecha clave, desde luego, fue la fecha en que venció el término que tenía la parte querellada-recurrida para contestar la querella. Ésta tenía quince (15) días para contestar, conforme a la sección 3 de la Ley 2, *supra*.  Como señalamos anteriormente, dicha sección establece que si copia de la querella u orden de citación se notifica fuera del distrito judicial en donde se promueve la acción, la parte querellada tendrá un término de quince (15) días para radicar su contestación por escrito. 32 L.P.R.A. sec. 3120.  En el caso de autos, aunque la acción judicial fue promovida en el Distrito Judicial de San Juan, la querella sin embargo fue notificada dos veces, el mismo día, en dos municipios (Manatí y Bayamón) que no corresponden al "distrito judicial en que se prom[ovió] la acción". *Véase Hernández v. Espinosa*, res. el 3 de abril de 1998, 145 D.P.R. \_\_, 98 T.S.P.R. 40, 98 J.T.S. 41. Por lo tanto, el último día hábil para contestar la querella que tenía la parte querellada-recurrida fue el 3 de agosto de 2000. **No lo hizo.**[22]

---

[22] Por otra parte, en cuanto a la denegatoria de la moción de prórroga, la parte recurrida expone en su alegato la teoría de que el fallo del tribunal se debió a que, al momento de decidir, el tribunal no tuvo ante sí copia del juramento requerido por la Ley 2, ya que por error éste no se acompañó con la copia de cortesía que supuestamente utilizó el tribunal al dictar el fallo, aunque sí se acompañó a la moción que radicó en el Tribunal. No tiene razón, ya que su teoría se funda en dos (2) premisas equivocadas, a saber: primero, que de haberse acompañado la copia del juramento, el tribunal hubiese sin duda concedido la solicitud de prórroga; y segundo, que un tribunal está siempre obligado a conceder una prórroga, si se da fiel cumplimiento a los requisitos de ley. No podemos admitir su teoría.

Hemos insistido siempre que, bajo la Ley 2, una prórroga sólo procederá en circunstancias especialísimas,

continúa...
...[22] continuación

excepcionales y poco frecuentes, es decir, cuando exista "causa justificada", ya que de ordinario no debe existir razón alguna para dilatar los procedimientos. *Rivera v. Insular Wire Products, supra*, pág. 926. Además, la sección 3 de la Ley 2, *supra*, dispone claramente que la concesión de una prórroga es una determinación enteramente discrecional del tribunal, no mandatoria. 32 L.P.R.A. sec. 3120 (el juez **"podrá"** prorrogar el termino para contestar).

Por otro lado, no podemos pasar por alto la razón fundamental que dio el TPI al denegar la solicitud de prórroga: "se trata de un procedimiento sumario". Ante

En vista de que la sentencia del TPI se dictó sin que el querellado, o sea, la parte aquí recurrida, contestara la querella, el TPI tenía autorización para dictar sentencia en rebeldía al amparo de la sección 3, *supra*. Así lo hizo, a solicitud del peticionario, el 17 de agosto de 2000. Dicha sentencia fue **final** el día que fue notificada, es decir, el 25 de agosto de 2000. Y según la sección 3, *supra*, esta sentencia dictada por el foro de instancia en rebeldía no podía apelarse.

No obstante, la parte recurrida tenía a su disposición el derecho de acudir al TCA mediante *certiorari* **dentro de los diez (10) días siguientes a la notificación de la sentencia**, para plantear cualquier asunto de índole procesal. 32 L.P.R.A. sec. 3121. Habiendo el TPI notificando su sentencia el 25 de agosto, la parte recurrida tenía hasta el 4 de septiembre de 2000 para radicar dicho recurso de *certiorari*. **Tampoco lo hizo.**

En cambio, el 6 de septiembre la parte recurrida radicó una solicitud mixta de reconsideración y/o relevo de sentencia, esgrimiendo aquellos planteamientos que debió haber formulado propiamente en el recurso de certiorari provisto por la sección 4 de la Ley 2, *supra*. Dicha solicitud **fue denegada por primera vez el 25 de septiembre de 2000.**

De esta primera denegación a su solicitud de reconsideración y/o relevo acudió la parte recurrida ante el TCA, mediante un recurso de *certiorari*, el 30 de octubre de 2000. El peticionario por su parte alega ante nos que dicho recurso no era procedente al amparo de la Ley 2, ya "que los términos para revisar la determinación ya habían decursado". Concluye que erró el TCA al expedir el recurso, y al revocar al TPI.

La sección 7 de la Ley 2, *supra*, establece claramente que "el tribunal conservará la discreción que le concede la Regla 49.2 de las de Procedimiento Civil" para relevar a una parte de una sentencia dictada en su contra conforme al procedimiento sumario establecido en la Ley 2. Asimismo, la sección 3 de la Ley 2, *supra*, dispone en parte

---

esta inequívoca expresión no cabe discernimiento adicional. Nada expresó sobre la ausencia del juramento requerido por la sección 3, *supra*, ni sobre algún otro incumplimiento de ley, según alega la parte recurrida. En fin, la concesión de prórrogas queda siempre a la discreción del sano juicio del tribunal. Rechazamos por tanto la teoría formulada por la parte recurrida, por entender que carece de mérito.

pertinente que en los casos que se tramiten con arreglo a las secciones 1 a 15 "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido" por dichas secciones.[23] Empero, la moción de relevo deberá radicarse dentro del término de sesenta (60) días de notificada la sentencia, y los hechos deben exponerse bajo juramento. Véase 32 L.P.R.A. secs. 3120 y 3124.

Es doctrina claramente establecida que "aún cuando hemos señalado que la Regla 49.2 . . . debe interpretarse de forma liberal, esto no significa que se utilice en sustitución de los recursos de revisión o reconsideración". *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, 688 (1979); *González v. Chávez*, 103 D.P.R. 474, 476 (1975); *Builders Ins. Co. v. Tribunal Superior*, 100 D.P.R. 401, 404 (1972); *E.L.A. v. Tribunal Superior*, 86 D.P.R. 692 (1962); *Banco Popular v. Tribunal Superior*, 82 D.P.R. 242 (1961). Y según hemos resuelto insistentemente, tampoco pude utilizarse "como remedio sustituto para el recurso de revisión provisto por ley". *Builders Ins. Co. v. Tribunal Superior*, 100 D.P.R. 401, 404 (1972).

En el caso de autos, no hay duda la parte recurrida presentó una moción mixta de reconsideración y/o relevo dentro del término exigido por la sección 7, *supra*. Sin embargo, resulta claro que utilizó dicho mecanismo para hacer planteamientos que, propiamente, debió haber formulado ante el TCA en el recurso de *certiorari* provisto por la sección 4 de la Ley 2, *supra*, es decir, dentro de los diez (10) días siguientes a la fecha de la notificación de la sentencia dictada en rebeldía. Como ya indicamos, no lo hizo. A más de esto, debemos subrayar que el TPI no tan sólo denegó la moción de relevo el 25 de septiembre, sino que reiteró dicho fallo una segunda vez el 24 de octubre de 2000.[24]

El 29 de diciembre de 2000, el TCA emitió sentencia concluyendo que el TPI dictaminó sólo la improcedencia de la reconsideración, pero

---

[23] 32 L.P.R.A. secs. 3118 a 3132.

[24] La parte recurrida, como también indicamos, reconoce en todo momento que su moción fue rechazada la primera vez, es decir, el 25 de septiembre de 2000. Sobre ello no cabe duda. Véase nota al calce núm. 14, *supra.*

Ahora bien, por razones que desconocemos, la parte recurrida nunca notificó al TCA sobre la orden del TPI de 24 de octubre que **reiteró** la denegatoria a su moción de relevo. Asimismo, nos hemos percatado de que la parte recurrida omitió señalar dicho (segundo) fallo en su alegato ante nos, por razones que también desconocemos.

nada había dispuesto sobre la procedencia del relevo solicitado por la recurrida. Por tanto, expidió el auto, revocó al TPI, y devolvió el caso al TPI "para que resuelva la moción de relevo de sentencia".

Como indicamos, en el caso de autos la parte querellada no presentó contestación a la querella en término. Y cuando el TPI dictó sentencia, tampoco radicó el recurso de *certiorari* específicamente previsto por la sección 4 de la Ley 2, *supra*. Tomando en consideración los intereses envueltos, como hemos resuelto reiteradamente, la parte recurrida simplemente no podía pretender utilizar su moción de relevo "como remedio substituto para el recurso ordinario de revisión" provisto por ley, *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290, 294 (1974).

El TCA actuó sin jurisdicción al acoger el recurso de *certiorari* presentado por la parte aquí recurrida posteriormente, y emitir Sentencia el 29 de diciembre de 2000 revocando al TPI.[25] Por lo tanto, concluimos que el error señalado por el peticionario en su recurso fue cometido.

### III

Por todo lo anterior, se expide el auto de *certiorari* y se revoca la Sentencia del Tribunal de Circuito de Apelaciones emitida el 29 de diciembre de 2000 por carecer dicho foro de jurisdicción; se revoca la resolución del Tribunal de Primera Instancia emitida el 22 de mayo de 2001 por carecer éste de jurisdicción y se deja en vigor la sentencia en rebeldía emitida por dicho foro el 15 de agosto de 2000.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[25] Fuimos informados mediante una "Moción Informativa" presentada por la parte recurrida el 15 de junio de 2001, que el TPI emitió resolución declarando con lugar la moción de relevo de sentencia, el 22 de mayo de 2001, por lo que ordenó "la continuación de los procedimientos". Ello, a pesar de que había declarado sin lugar dicha moción en dos ocasiones previamente. En otras palabras el TPI actuó cerca de siete meses luego de haber declarado sin lugar la solicitud de relevo de sentencia por segunda ocasión el 25 de octubre de 2000, y más de nueve meses luego de su dictamen original del 15 de agosto de 2000, declarando con lugar la querella. Actuó sin jurisdicción.

Si bien es cierto que la presentación de una petición de *certiorari* no paraliza los procedimientos ante el tribunal de instancia o ante el TCA, no obstante, es norma claramente establecida en nuestra jurisdicción que, un tribunal no puede reconsiderar un dictamen suyo **pasado el término de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia.** *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991); *Suárez v. Flamingo Homes, Inc.*, 102 D.P.R. 664, 669 (1974). Pasado dicho término, el tribunal simplemente queda desprovisto de jurisdicción.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor Ríos Moya

   Querellante-Peticionario

         v.              CC-2001-216        Certiorari

Industrial Optics y/o
Centro Visual del Norte

   Querellado-Recurrido

SENTENCIA

San Juan, Puerto Rico, a 21 de agosto de 2001.

   Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de *certiorari* y se revoca la Sentencia del Tribunal de Circuito de Apelaciones emitida el 29 de diciembre de 2000 por carecer dicho foro de jurisdicción; se revoca la resolución del Tribunal de Primera Instancia emitida el 22 de mayo de 2001 por carecer éste de jurisdicción y se deja en vigor la sentencia en rebeldía emitida por dicho foro el 15 de agosto de 2000.

   Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.

              Isabel Llompart Zeno
          Secretaria del Tribunal Supremo