Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| RUTH EILEEN BETANCOURT DELGADO QUERELLANTE-RECURRIDA V. ORIENTAL BANK QUERELLADO-PETICIONARIO | TA2025CE00296 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón Civil Núm.: BY2024CV03971 Sobre: Despido Injustificado Ley Núm. 80 y Ley de Procedimiento Sumario, Ley Núm. 2, Según Enmendada |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de agosto de 2025.

Comparece ante nos, Oriental Bank (en adelante, "Oriental"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Resolución"* emitida y notificada el 4 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida determinación interlocutoria, el foro primario declaró *No Ha Lugar* la "*Moción de Sentencia Sumaria,"* presentada por Oriental. En consecuencia, ordenó la continuación de los procedimientos. Todo, dentro de un pleito civil al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 et seq, incoado por Ruth Eileen Betancourt Delgado (en lo sucesivo, "la recurrida").

Por los fundamentos que expondremos a continuación, *denegamos* la *expedición* del recurso de *certiorari* presentado.

**I.**

A continuación, esbozaremos un resumen de los hechos mas relevantes a la cuestión en litigio.

La presente disputa tuvo su origen en la *"Querella"* presentada el 8 de julio de 2024 por la recurrida. Surge de los relatos de la recurrida, que ésta ocupaba el cargo de Oficial de Préstamos Hipotecarios en la institución bancaria Oriental. Sin embargo, el 6 de marzo de 2024, fue alegadamente despedida de su puesto laboral sin justificación. Ante tal acontecimiento, instó la presente causa de acción al amparo de la Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq y la Ley Núm. 2, *supra*. En concepto de compensación solicitó el pago de mesada; honorarios de abogado; costas; y gastos legales.

En respuesta, el 22 de julio de 2024, Oriental presentó *"Contestación a Querella."* En síntesis, negó las alegaciones principales expuestas en la *"Querella."* Alegó en la afirmativa, que el aducido despido se efectuó por causas justificadas en aras de preservar el buen funcionamiento de la institución bancaria. Asimismo, negó la procedencia de las compensaciones reclamadas en la *"Querella."* Ante tales planteamientos, solicitó la desestimación de la referida *"Querella."*

Concluido el descubrimiento de prueba, el 2 de mayo de 2025, Oriental presentó *"Moción de Sentencia Sumaria."*[1] En esencia, aseveró que la recurrida no tiene a su favor una causa de acción por despido injustificado, puesto que fue despedida legítimamente por no cumplir los deberes de su puesto y violentar la normativa de la institución bancaria. Ante tales alegaciones, peticionó la desestimación sumaria de la

---

[1] Oriental acompañó su solicitud con la siguiente prueba documental: "Declaración Jurada" suscrita por Maritza Rivera Massó; "Acuerdo de Empleo;" Correo electrónico de 12 de diciembre de 2022; Epístola dirigida a Ruth Betancourt Delgado de fecha de 6 de marzo de 2024; "Código de Conducta y Ética de Negocios;" documento sobre información de empleo de Ruth Betancourt Delgado; "Guías de Manejo de Información;" "Deposición de la Sra. Ruth Eileen Betancourt Delgado;" "Declaración Jurada" suscrita por Manuel A. Fuentes Soto; ocho (8) documentos intitulados: "Planilla de Contribución sobre Ingresos de Individuos" del año 2020; quince (15) documentos intitulados: "Planilla de Contribución sobre Ingresos de Individuos" del año 2021; cuatro (4) documentos intitulados: "Planilla de Contribución sobre Ingresos de Individuos" del año 2022; "Declaración Informativa – Servicios Prestados."

reclamación a tenor de que los hechos esenciales del caso no están en controversia. En síntesis, fundamentó su solicitud en aducidas admisiones de la recurrida relacionadas a que envió a su correo electrónico personal información y documentos de clientes. De igual modo, sostuvo su petición en que alegadamente la recurrida expresó información falsa en varios préstamos a su cargo.

En reacción, el 30 de mayo de 2025, la recurrida presentó *"Oposición a Moción de Sentencia Sumaria."*[2] Argumentó que el caso presenta hechos materiales en controversia. En particular, resaltó la existencia de controversia con relación a las funciones de su puesto; al salario base anual más alto devengado; y a las aducidas violaciones a la normativa institucional. Además, aseveró que es improcedente la adjudicación sumaria del pleito toda vez que es un caso en que se deben dilucidar cuestiones de credibilidad. A su vez, adujo que Oriental acompañó su petitorio con documentos que no fueron objeto del descubrimiento de prueba.

En atención de los escritos presentados, el 4 de agosto de 2025, el foro recurrido notificó la *"Resolución"* que hoy nos ocupa. Mediante esta, declaró *No Ha Lugar* la "*Moción de Sentencia Sumaria,"* presentada por Oriental. En consecuencia, ordenó la continuación de los procedimientos.

Además, el foro primario esbozó en su determinación los siguientes hechos materiales que no están en controversia:

> 1. El 24 de mayo de 2010, la querellante firmó un acuerdo de empleo con Scotiabank.
>
> 2. Como parte de su acuerdo de empleo, Betancourt acordó trabajar para el Banco de manera diligente y honesta. Además, acordó mantener la confidencialidad de la información que recibiera como parte de su empleo.
>
> 3. La fecha de comienzo de empleo de la querellante como empleada de Scotiabank fue el 1 de junio de 2010.
>
> 4. Al comenzar su empleo con Scotiabank, la querellante recibió las políticas de la empresa.

---

[2] La recurrida acompañó su oposición con la siguiente prueba documental: "Job Description;" de Scotiabank; "Job Description;" "Solicitud de Copia de Planilla, Relevo de Herencia y Donación;" "Poder y Declaración de Representación;" Documento intitulado "Firmas requeridas antes del Despacho;" extractos de la "Deposición de la Sra. Ruth Eileen Betancourt Delgado;" Misiva de despido de la recurrida; "Declaración Jurada" suscrita por Ruth Eileen Betancourt Delgado.

5. El nombre de la posición que la querellante ocupaba en Scotiabank era el de Outside Sales Officer.

6. La querellante acusó recibo de las funciones del puesto de Outside Sales Officer.

7. Betancourt admitió bajo juramento que no entendía algunas de las funciones que surgen del job description del puesto que ocupaba.

8. El 31 de diciembre de 2019 se materializó la compra de todas las operaciones de Scotiabank de Puerto Rico por parte de Oriental. Bajo tales premisas, Oriental advino a ser patrono sucesor de la querellante.

9. El nombre de la posición que la querellante ocupaba en Oriental era el de Advisor Retail Banking (originadora de préstamos).

10. Betancourt recibía comisiones en la medida que ésta originara préstamos que eventualmente se cerraran.

11. Betancourt admitió bajo juramento que recibió los manuales, políticas y procedimientos de Oriental.

12. Betancourt admitió bajo juramento que, aunque acusaba recibo del "Manual de Normas de Conducta y Disciplina para Empleados" (el "Manual"), ésta no descargaba el mismo y que tampoco lo había leído.

13. La querellante admitió en su deposición que cada vez que Oriental revisaba el Manual, ella recibía una notificación por email del Manual actualizado.

14. La querellante admitió en su deposición que cada vez que Oriental notificaba las modificaciones de las políticas, Betancourt acusaba recibo de estas, pero no las descargaba.

15. La querellante admitió que ésta conocía que debía cumplir con las normas del Manual.

16. Betancourt admitió bajo juramento que, aunque acusó recibo del "Código de Conducta y Ética del Negocio", ésta no descargó el mismo.

17. El Manual de Normas de Conducta y Disciplina para Empleados dispone, en su Norma 27, lo siguiente: De igual forma, está prohibido dar información incorrecta, incompleta o falsa, al igual que la omisión de proveerla, en el desempeño de sus funciones y deberes como empleado de Oriental, sea intencionalmente o por negligencia. El tergiversar o manipular información u omitirla para beneficio del empleado o de un tercero, será causa para la acción disciplinaria correspondiente en el momento en que sea detectado, incluyendo el despido, según las circunstancias del caso.

18. La Norma 8 del Manual de Normas de Conducta y Disciplina para Empleados de Oriental dispone lo siguiente: La eficiencia y competencia en el trabajo es requisito indispensable del empleado en el puesto que ocupa, por lo que la negligencia, incompetencia o dejadez en el desempeño de las funciones que realiza es causa para que se tome la acción disciplinaria correspondiente. El gerente y/o supervisor es responsable de la eficiente administración de su unidad de trabajo, incluyendo el control de gastos y manejo de los recursos humanos, de conformidad con las políticas de Oriental. El no llevar a cabo sus funciones de forma eficiente, a tono con la filosofía y las necesidades de Oriental, es causa suficiente para el despido.

19. La Norma 12 del Manual de Normas de Conducta y Disciplina para Empleados de Oriental dispone lo siguiente: Es requisito para el empleado mantener siempre en confidencia toda la información relacionada con Oriental, subsidiarias, así como los asuntos de los clientes, compañeros de trabajo y suplidores. Cualquier información que pueda razonablemente interpretarse como de carácter confidencial y que haya sido adquirida a través de la relación con Oriental no debe ser comentada o divulgada a persona alguna. Todos los datos e información no publicada en el dominio público relacionada al negocio, sus empleados, clientes, oficiales y suplidores deberá siempre mantenerse confidencial. La información que Oriental posee sobre sus clientes es estrictamente confidencial y sólo podrá ser divulgada por personal autorizado. Nada de lo que ocurra en Oriental debe comentarse fuera de la institución o con personas dentro de Oriental a quienes no les compete conocer el asunto, excepto por lo provisto por leyes especiales expresamente en casos de violación de ley. Es decir, aún dentro de Oriental, la información debe limitarse a los oficiales y empleados que tienen necesidad de conocerla por razones de la operación. Es indispensable siempre mantener un sentido de lealtad y abstenerse de hacer manifestaciones o exhortaciones sobre el servicio y los productos que puedan perjudicar el buen nombre y reputación de Oriental y/o sus oficiales. Los códigos de acceso a sistemas electrónicos, así como los programas de computadoras e internet y/o cualquier otro mecanismo o sistema que se adopte y/o sustituya a éstos y la información contenida en los mismos, no se usarán para fines personales ni serán transferidos, comunicados o divulgados a otros empleados o a personas fuera de Oriental. Para más información, revisar la Guías de Manejo de Información y el Código de Conducta y Ética de Negocio, cuyos contenidos se adoptan por referencia y se integra a esta norma en su totalidad.

20. La querellante declaró bajo juramento en su deposición que ella conocía que la información de los clientes de Oriental era confidencial y privada.

21. Las "Guías de Manejo de Información" disponen lo siguiente: 1.13 Está estrictamente prohibido enviar, copiar (incluye en medios removibles), grabar o imprimir información de Oriental o de clientes sin el consentimiento de un supervisor autorizado. Siempre que sea necesario, se debe mediar un acuerdo de confidencialidad al transferir información privada de los clientes y de la empresa. 1.14 Cualquier empleado o persona que por cualquier razón obtenga acceso a la información del cliente o de la compañía no puede copiarla, distribuirla, alterarla o usarla de ninguna manera sin el consentimiento de sus supervisores. 1.39 Se prohíbe el almacenamiento de información de Oriental en servicios de almacenamiento de datos no autorizados previamente por el área de Tecnología de la Información. Esto incluye servicios como Dropbox, iCloud, etc. También está prohibido almacenar o manejar información oriental en computadoras propiedad de empleados / asociados. 1.40 Está prohibido utilizar sistemas de correo electrónico personal como Gmail y Hotmail para fines de laborales de Oriental.

22. La querellante mientras laboró para Oriental tomó entrenamientos y adiestramientos.

23. Oriental le requería a Betancourt tomar cursos anualmente.

24. Betancourt tomó el adiestramiento "Privacy, GLBA Safe Guards Rule", en el cual se les discute a los empleados las "Guías de Manejo de Información".

25. La querellante declaró bajo juramento en su deposición que como parte de los entrenamientos que el Banco le ofrecía, ésta debía tomar exámenes.

26. El Código de Conducta y Ética de Negocios de Oriental le exige al empleado lo siguiente: "En tus actividades profesionales y personales debes cumplir con la ley y con todas nuestras políticas y guías internas. Cualquier conducta ilegal pudiera causar serios daños a nuestra reputación y empresa, y en algunos casos, Oriental pudiera tener responsabilidad criminal por dicha conducta. Si crees que alguien está cometiendo un crimen o una violación de ley, tienes que reportarlo de inmediato al Asesor General o a cualquiera de los Canales Adicionales Designados dependiendo de las circunstancias".

27. El Código de Conducta y Ética de Negocios de Oriental le exige al empleado lo siguiente: "Estaré alerta para proteger a Oriental de personas que pretendan utilizar esta institución para lavar dinero o conducir actividades ilegales".

28. El Código de Conducta y Ética de Negocios de Oriental advierte que violaciones al mismo podrían ser sancionadas con el despido.

29. Betancourt testificó en su deposición que recibía información por parte de los clientes de Oriental por mensajes de texto o WhatsApp.

30. El 6 de marzo de 2024, la querellante fue citada por el Departamento de Recursos Humanos de Oriental.

31. El 6 de marzo de 2024, Oriental le notificó a Betancourt que, como resultado de la investigación realizada, el Banco decidió prescindir de sus servicios. Además, ese día, le entregó una carta de despido, la cual Betancourt firmó como recibida.

32. Betancourt conocía que el negocio de préstamos hipotecarios es un negocio que tiene regulaciones federales.

33. Betancourt conocía que someter información falsa en el procesamiento de un préstamo hipotecario es un delito.

De igual modo, el foro primario esbozó los siguientes hechos en controversia:

1. Cuales eran exactamente las funciones del puesto de la querellante.

2. Si dentro de las funciones de la querellante se encontraban el verificar que las planillas de hacienda y verificaciones de empleo recibidas fuesen exactas a las que fueron radicadas en el Departamento de Hacienda y/o con la información verificada por la compañía de la certificación de empleo recibida por la querellante.

3. El salario base anual más alto devengado por la querellante durante los últimos tres (3) años de su empleo.

4. Si querellante violó o no las Guías de Manejo de Información.

5. Que otras opciones tenía la querellante para recibir documentos en los casos que los clientes no podían enviar al correo electrónico del banco la información requerida.

6. Si la querellante pudo haber enviado por otro medio al correo electrónico del banco las planillas que recibió de algunos clientes por otra plataforma.

7. Si la querellante recibió o no una advertencia por sus alegadas faltas en sus deberes y funciones para el querellado.

8. Si la querellante incumplió con las normas y políticas del banco.

9. Si en efecto se cometió el alegado despido injustificado.

10. Si la querellante tiene derecho a una mesada y de tener derecho la cuantía de esta.

En desacuerdo con la determinación interlocutoria, el 14 de agosto de 2025, Oriental compareció ante este Tribunal mediante un recurso de *certiorari.* A través de este, esbozó los siguientes señalamientos de error:

Erró el Tribunal de Primera Instancia al meramente acoger como hechos incontrovertidos los hechos propuestos que fueron admitidos por la parte contraria y al, con este proceder, no adentrarse a examinar si verdaderamente la querellante controvirtió todos los hechos incontrovertidos que encuentran apoyo en la evidencia referenciada

Erró el Tribunal de Primera Instancia al negarse a emitir sentencia por la vía sumaria cuando no existe controversia real de hechos y el dictamen sumario procede como cuestión de Derecho.

Por su parte, el 18 de agosto de 2025, la recurrida presentó *"Moción en Oposición a Expedición de Petición de Certiorari."*

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable al asunto ante nos.

**II.**

**Procedimiento Sumario en las Reclamaciones Laborales**:

La Ley de Procedimiento Sumario de Reclamaciones Laborales, *supra*, dispone un mecanismo de reclamaciones laborales para la consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y derechos laborales de manera expedita. 32 LPRA sec. 3118; *Peña Lacern v. Martínez Hernández et al.*, 2010 DPR 425, 434 (2022); *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008); *Ríos v. Industrial Optic,* 155 DPR 1, 10 (2001); *Santiago v. Palmas del Mar Properties, Inc.,* 143 DPR 886, 891 (1997). Para dicha legislación, la Asamblea Legislativa tuvo la intención de brindar a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas contra los patronos. *Reyes Berríos v. ELA,* 213 DPR 1093, 1101 (2024).

Cónsono con lo anterior, el procedimiento sumario de reclamaciones laborales establece una serie de limitaciones para los momentos en que el

Foro Apelativo revisa las resoluciones interlocutorias emitidas por el Tribunal de Primera Instancia. Véase, *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 348 (2021). Siendo así, de ordinario la parte que pretende impugnar una resolución interlocutoria deberá esperar a que se dicte una resolución final para que se puedan revisar las actuaciones del foro recurrido. *Id.* A manera de excepción, las resoluciones interlocutorias dictadas al amparo del referido procedimiento sumario serán revisables si ocurre alguno de los siguientes escenarios: (1) cuando el foro primario haya accionado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) cuando la revisión tenga el efecto de evitar una grave injusticia. *Ortiz v. Holsum*, 190 DPR 511, 517 (2014).

**III.**

En el caso presente, Oriental recurre de una resolución interlocutoria mediante la cual el foro primario declaró *No Ha Lugar* su "*Moción de Sentencia Sumaria.*" Conforme esbozado, la reclamación incoada por la recurrida se conduce a través del procedimiento sumario establecido en la Ley Núm. 2, *supra*. Siendo así, nuestra facultad para revisar la presente determinación interlocutoria está limitada por tres (3) numeradas excepciones. El recurso presentado por Oriental no cumple con ninguna de las aludidas excepciones. Entiéndase, no plantea alguna cuestión jurisdiccional; tampoco versa sobre algún asunto de grave injusticia; ni su inmediata revisión dispone del caso por completo. Para auscultar la procedencia de dichas excepciones, realizamos un examen de *novo* del expediente ante nuestra consideración de conformidad al marco jurídico atinente a las sentencias sumarias. Véase, *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros,* 2025 TSPR 78 (2025); *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62.

Ante lo expuesto, concluimos que en esta etapa de los procedimientos no procede nuestra intervención en el caso para no

desvirtuar la naturaleza expedita del procedimiento especial de la Ley Núm. 2, *supra.* Oriental deberá esperar hasta que se dicte resolución final para levantar cualquier error que estime pertinente, si alguno.

**IV.**

Por los fundamentos que anteceden, *denegamos* la *expedición* del auto de *certiorari,* presentado por Oriental.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones