EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Arroyo Camacho y Aleja del Valle Trinidad<br><br>    Recurrida<br><br>        vs.<br><br>La Sucn. de Ángel Joglar compuesta por María Juana Suárez, et als<br><br>    Recurrida<br><br>José Antonio Joglar Suárez<br><br>    Peticionario | Certiorari<br><br>2008 TSPR 72<br><br>173 DPR ____ |

Número del Caso: CC-2006-205

Fecha: 7 de mayo de 2008

Tribunal de Apelaciones:

      Región Judicial de San Juan

Juez Ponente:

      Hon. Emmalind García García

Abogada de la Parte Peticionaria:

      Lcda. Edmée Vincenty

Abogados de la Parte Recurrida:

      Lcda. Nilka Marrero García
      Lcda. Carmen Amparo Ríos García
      Lcdo. Pedro Juan Semidey Morales

Materia: Reclamación de Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Arroyo Camacho y Aleja del Valle Trinidad
        Recurrida

        v.

La Sucn. de Ángel Joglar Compuesta por María Juana Suárez, et als     CC-2006-205
        Recurrida

José Antonio Joglar Suárez
        Peticionario

SENTENCIA

San Juan, Puerto Rico, a 7 de mayo de 2008.

Se nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, que denegó la expedición de un auto de *Certiorari*, por entender que su intervención desvirtuaría la naturaleza sumaria del procedimiento de reclamación laboral que pendía ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Veamos los hechos acaecidos que originan el presente recurso.

I

El 21 de octubre de 1978, el señor Ángel Joglar Suárez, en adelante el causante o padre, falleció habiendo otorgado testamento ológrafo, que fue

debidamente protocolizado mediante escritura número tres (3), del 19 de julio de 1983.[1] El causante instituyó como herederos únicos y universales en la legítima forzosa a sus cuatro (4) hijos. Además, designó como legatarios a sus hijos María Eugenia Joglar Suárez, en adelante señora Eugenia Joglar Suárez, María Margarita Joglar Suárez, en adelante señora Margarita Joglar Suárez, y en conjunto las hermanas, y Ángel Joglar Suárez, en adelante señor Ángel Joglar Suárez, con cargo al tercio de mejora y libre disposición en inmuebles específicos, entre los cuales se encontraba el establecimiento comercial Parking Santa Rita. El señor José Antonio Joglar Suárez, en adelante el peticionario, fue excluido de dicho legado.

El 12 de diciembre de 1980, el peticionario vendió su participación hereditaria en el caudal de su padre, en partes iguales, a sus dos (2) hermanas, la señora Eugenia Joglar Suárez y la señora Margarita Joglar Suárez, por la cantidad de $66,000.[2]

El 15 de junio de 1995, el señor Juan Arroyo Camacho, en adelante señor Arroyo Camacho, y la señora Aleja del Valle Trinidad, en adelante señora Valle Trinidad, y en conjunto los querellantes, presentaron Querella en contra de la Sucn. Ángel Joglar Suárez, en adelante Sucn. Joglar.[3] El señor Arroyo Camacho, alegó, entre otras cosas, que comenzó a trabajar en el Parking Santa Rita desde 1960 y

---

[1] Apéndice del recurso de *Certiorari*, págs. 89-100.

[2] *Íd.*, págs. 101-107.

[3] *Íd.*, págs. 78-84.

que tenía un horario de trabajo de once (11) horas diarias, seis (6) días a la semana sin hora disponible para almuerzo. Indicó, además, que el 1 de abril de 1995 lo enviaron de vacaciones por 18 días y que a su regreso le informaron que no se reportara a trabajar sino que acudiera al Fondo del Seguro del Estado. Señaló, además, que siguió acudiendo a trabajar al "Parking Santa Rita" pero que no se le permitía, ya que desde el 1 de abril de 1995 laboraban allí dos (2) personas nuevas. La señora Valle Trinidad, alegó, por su parte, que comenzó a trabajar en el "Parking Santa Rita" allá para principios de 1982, como ayudante del señor Arroyo Camacho, su esposo. Indicó, además, que el 20 de abril de 1995 fue separada de su empleo sin razón o justificación alguna. Señaló, además, que adoptaba por referencia y hacía suya las alegaciones de la causa de acción del señor Arroyo Camacho. Ambos querellante alegaron que se les adeudaba, por separado, la cantidad de $203,673.20 y dicha cantidad por partida doble conforme lo establece la ley.

El 31 de agosto de 1995, la Sucn. Joglar, presentó ante el Tribunal de Primera Instancia, "Contestación a la Querella".[4] Alegaron, entre otras cosas, que a los querellantes se le pagaron todas las horas que éstos habían trabajado. Sostuvieron, además, que nunca se les exigió a los querellantes trabajar durante el período de alimentos. Indicaron, además, que a los querellantes nunca se les separó de su empleo.

---

[4] Íd., págs. 85-88.

El 1 de enero de 1997, falleció la señora María Juana Suárez, viuda de Joglar, en adelante la madre, habiendo otorgado testamento ológrafo, que fue debidamente protocolizado mediante Escritura número cinco (5), del 19 de junio de 1997.[5] La señora María Juana Suárez, viuda de Joglar, instituyó como herederos únicos y universales en la legítima forzosa a sus cuatro (4) hijos. Designó como legatarios a tres (3) de sus hijos con cargo al tercio de mejora y libre disposición en inmuebles específicos, entre los cuales se encontraba el "Parking Santa Rita". El peticionario fue excluido de dicho legado.

Luego de varios incidentes procesales, el 13 de agosto de 1999, las partes presentaron ante el Tribunal de Primera Instancia, *"Informe de Conferencia Preliminar entre Abogados".*[6]

El 24 de noviembre de 1999, las partes presentaron un *"Informe Enmendado de Conferencia Preliminar entre Abogados".*[7]

En el año 2000, falleció el señor Ángel Joglar Suárez, hijo, dejando como su única y universal heredera a su hermana, la señora Margarita Joglar Suárez.[8]

El 19 de marzo de 2002, el peticionario vendió sus derechos en la herencia de su madre a sus dos hermanas.

---

[5] *Íd.*, págs. 108-112.

[6] *Íd.*, págs. 113-136.

[7] *Íd.*, págs. 137-161.

[8] *Íd.*, pág. 66.

El 11 de marzo de 2003, el peticionario presentó ante el Tribunal de Primera Instancia, *"Moción de Desestimación y/o Sentencia Sumaria en Cuanto al Co-Demandado José A. Joglar Suarez"*.[9] Alegó, entre otras cosas, que desde el 12 de diciembre de 1980, él no formaba parte de la Sucn. Joglar por haber vendido sus derechos hereditarios a sus hermanas. Indicó, además, que nunca participó en la operación del "Parking Santa Rita", ni recibió cantidad alguna de sus ingresos, ya que no formaba parte de la Sucn. Joglar por la venta que hizo de su participación. Solicitó, que se desestimara la querella presentada en cuanto a su persona.

El 27 de marzo de 2003, los querellantes presentaron ante el Tribunal de Primera Instancia, *"Réplica a Moción de Desestimación y/o Sentencia Sumaria en cuanto a Codemandado José Joglar"*. Alegaron, entre otras cosas, que el hecho que el peticionario haya vendido su participación hereditaria a otros herederos no lo convertía en un extraño de la sucesión en una reclamación de terceros contra la misma. Arguyeron, además, que el peticionario era miembro de la Sucn. Joglar aun después de haber vendido su participación hereditaria en el 1980. Indicaron, además, que el peticionario nunca repudió las herencias de su padre o madre, siendo esta la única circunstancia legal que lo relevaría de ser miembro de ellas.

El 15 de abril de 2003, la señora Eugenia Joglar Suárez, presentó ante el Tribunal de Primera Instancia,

---

[9] *Íd.*, págs. 165-167.

*"Réplica a Moción de Sentencia Sumaria y Solicitud sobre Procedencia de Archivo"*.[10] Alegó, entre otras cosas, que el peticionario radicó una petición de quiebra antes de la muerte de la señora María Juana Suárez, Viuda de Joglar, y éste tenía que informar al Tribunal de Quiebras de la existencia de la herencia y el síndico tenía que abandonar las posibles acciones de nivelación o la demanda contra coparte o cualquier otra que podía instar el peticionario desde la muerte de su madre. Sin embargo, el peticionario no solicitó autorización y el síndico no abandonó la causa de acción, por lo cual éste no puede instar reclamación en contra de sus hermanas. Solicitó, se dictara sentencia archivando la causa de acción y se impusieran sanciones.

El 24 de julio de 2003, el peticionario presentó ante el Tribunal de Primera Instancia, *"Memorando del Co-Querellado José A. Joglar, Conteniendo Solicitud de Desestimación y Sentencia Sumaria"*.[11] Alegó, entre otras cosas, que es a sus hermanas las que les correspondían la responsabilidad de las obligaciones del legado del "Parking Santa Rita". Indicó, además, que aunque él formó parte de la sucesión de la señora María Juana Suárez, viuda de Joglar, no fue designado como legatario del Parking Santa Rita. De existir alguna responsabilidad del peticionario como consecuencia de ser heredero de la sucesión de la señora María Juana Suárez, viuda de Joglar, su responsabilidad sería solamente en proporción a su

---

[10] *Íd.*, págs. 211-220.

[11] *Íd.*, págs. 168-172.

participación en el caudal relicto de esta. Arguyó, además, que no tenía responsabilidad de informar en el caso de quiebras su participación en el caudal relicto de su madre.

El 25 de agosto de 2003, el peticionario presentó ante el Tribunal de Primera Instancia, *"Moción para Solicitar Autorización de Demanda contra Coparte"* y *"Demanda Contra Coparte"*.[12] Alegó, entre otras cosas, que le interesaba presentar demanda contra coparte contra María Margarita, María Eugenia y Ángel, todos de apellidos Joglar Suárez, si en su día el tribunal determinase que él fuese responsable del pago de alguna cantidad de dinero a los querellantes.

El 3 de septiembre de 2003, la señora Eugenia Joglar presentó ante el Tribunal de Primera Instancia, *"Tercera Moción Solicitando se Dicte Sentencia y Desestime la Demanda Contra Coparte por Falta de Jurisdicción Sobre Dicha Alegación"*.[13] Alegó, entre otras cosas, que el peticionario ocultó al Tribunal de Quiebras las herencias de padre y madre, además de la reclamación laboral que existía al momento de presentar la petición de quiebras. Arguyó, además, que el peticionario no tenía legitimación activa para reclamar cantidad alguna en contra de sus hermanas. Indicó, además, que el Tribunal de Primera Instancia no tenía jurisdicción para atender la reclamación contra coparte instada, ya que ésta acción era prerrogativa del síndico del peticionario. Al no informar el activo al

---

[12] *Íd.*, págs. 221-224.

[13] *Íd.*, págs. 235-239.

Tribunal de Quiebras no tenía derecho a reclamar en el Tribunal de Primera Instancia. Solició que el Tribunal de Primera Instancia se declarara sin jurisdicción y ordenara al peticionario divulgar su herencia y reclamación laboral al Tribunal de Quiebras.

El 30 de septiembre de 2003, la señora Margarita Joglar Suárez, presentó ante el Tribunal de Primera Instancia, *"Contestación a la Demanda Contra Coparte y Moción de Desestimación de Dicha Demanda"*.[14] Alegó, entre otras cosas, que el peticionario siempre fue miembro de la Sucn. Joglar.

El 5 de diciembre de 2003, el peticionario presentó ante el Tribunal de Primera Instancia, *"Oposición a Moción Solicitando Igual Remedio Que Otras Mociones Anteriores"*.[15] Solicitó que se desestimara con perjuicio la acción en contra de él.

El 23 de enero de 2004, el Tribunal de Primera Instancia mediante *"Sentencia Parcial"*, tuvo por desistidos a los querellantes en cuanto a las señoras Margarita Joglar Suárez y Eugenia Joglar Suárez ya que habían llegado a un acuerdo confidencial. Se dispuso, además, que el caso continuaría en torno al peticionario.

El 27 de febrero de 2004, el Tribunal de Primera Instancia emitió *"Sentencia Parcial Enmendada Nunc Pro*

---

[14] *Íd.*, págs. 228-231.

[15] *Íd.*, págs. 232-234.

*Tunc*".[16] El tribunal enmendó la sentencia de 23 de enero de 2004, con el único fin de añadirle la certificación de finalidad dispuesta por la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 43.5, para los casos de partes múltiples en que el pleito finaliza anticipadamente para alguna de las partes.

Inconforme, el peticionario presentó ante el Tribunal de Apelaciones, "*Apelación*". Alegó, entre otras cosas, que el Tribunal de Primera Instancia erró al dictar sentencia parcial final sin haber resuelto las cuestiones planteadas en sus mociones de desestimación y sentencia sumaria. Arguyó, además, que erró el foro de primera instancia al dictar sentencia parcial final sin antes requerir la sustitución de los dos (2) coquerellados fallecidos en el pleito y al denegar la moción solicitando copia de los acuerdos confidenciales entre los querellantes y las señora Margarita Joglar Suárez y Eugenia Joglar Suárez.

El 29 de octubre de 2004, notificado el 3 de noviembre de 2004, el Tribunal de Apelaciones emitió "*Sentencia*".[17] Sostuvo, entre otras cosas, que el que no se hubiera adjudicado antes la moción de sentencia sumaria no operó en detrimento de los derechos del peticionario, la sentencia apelada meramente permitió el desistimiento de la querella con respecto a dos (2) de las querelladas. Si el peticionario era patrono o no, de los querellantes, no depende de que las hermanas Joglar Suárez permanezcan como

---

[16] *Íd.*, págs. 244-245.

[17] *Íd.*, págs. 246-258.

partes en el pleito.  Igualmente, en vista de que el caso ya se había prolongado por un período aproximado de diez (10) años, ordenó al foro de primera instancia resolver la moción de desestimación y sentencia sumaria del peticionario en un período máximo de veinte (20) días.

El 1 de junio de 2005, notificada el 15 de junio de 2005, el Tribunal de Primera Instancia emitió *"Resolución"*.[18]    Sostuvo, entre otras cosas, que el peticionario continuaba siendo heredero de la Sucn. Joglar, ya que los hechos que dieron lugar a la demanda de los querellantes ocurrieron en vida del causante Angel Joglar Suárez y esposa.    Indicó, además, que hasta tanto el peticionario no acreditara al tribunal que puso en conocimiento al síndico a cargo de su caso de quiebras de los hechos que podían dar lugar a la presentación de la demanda que pretendía instar, no autorizaba la presentación de la misma.  Procedió a declarar no ha lugar la moción de desestimación y/o sentencia sumaria presentada por el peticionario.

Inconforme, el 14 de julio de 2005, el peticionario presenta ante el Tribunal de Apelaciones, *"Certiorari"*.[19] Alegó, entre otras cosas, que erró el Tribunal de Primera Instancia al determinar que él tenía responsabilidad como heredero de la reclamación objeto de la demanda presentada por los querellantes.  Arguyó, además, que erró el foro de primera instancia al no admitir la demanda contra coparte

---

[18] *Íd.*, págs. 55-63.

[19] *Íd.*, págs. 28-286.

para traer al resto de los herederos, en caso de que se le determinara responsabilidad frente a los querellantes.

El 27 de diciembre de 2005, notificada el 5 de enero de 2006, el Tribunal de Apelaciones emitió *"Sentencia"*.[20] Sostuvo, entre otras cosas, lo siguiente:

> Este caso se ha prolongado en exceso, desvirtuándose el carácter del procedimiento sumario para reclamaciones laborales. Los planteamientos levantados por el peticionario no son propios de un procedimiento de esta naturaleza. Éste no es un caso que amerite continuar desvirtuando el proceso con nuestra intervención revisando una orden interlocutoria. Tampoco es el caso extremo, en el cual el fin de la justicia requiera nuestra intervención para disponer del caso o permita su pronta disposición o porque la revisión inmediata tenga el efecto de evitar una grave injusticia.

> Por los fundamentos antes expresados, se deniega el recurso solicitado y se devuelve el caso para la continuación expedita de los procedimientos.

El 20 de enero de 2006, el peticionario presentó ante el Tribunal de Apelaciones, *"Reconsideración"*, la cual fue decretada no ha lugar, en *"Resolución"* notificada el 1 de febrero de 2006.[21]

Insatisfecho, el peticionario, acude ante nos mediante recurso de *Certiorari*, alegando la comisión de los errores siguientes:

> **A. ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL DETERMINAR QUE EL PRESENTE CASO ERA UNO BAJO EL PROCEDIMIENTO SUMARIO ESTABLECIDO EN LAS DISPOSICIONES DE LA LEY NÚM. 2 DE 1969, POR LO QUE TENÍA JURISDICCIÓN LIMITADA EN TORNO A LAS DETERMINACIONES INTERLOCUTORIAS, LIMITANDO SU INTERVENCIÓN A CUANDO LA RESOLUCIÓN SE HAYA DICTADO SIN**

---

[20] *Íd.*, págs. 3-13.

[21] *Íd.*, págs. 14-24, 25-27.

**JURISDICCIÓN, O EN CASOS EXTREMOS EN LOS CUALES LOS FINES DE LA JUSTICIA REQUIERAN LA INTERVENCIÓN PORQUE ESTA PUEDA DISPONER DEL CASO O PERMITA SU PRONTA DISPOSICIÓN, O CUANDO LA REVISIÓN INMEDIATA TENGA EL EFECTO DE EVITAR UNA GRAVE INJUSTICIA.**

**B.   ERRÓ   EL   TPI   AL   RESOLVER   QUE   LA RECLAMACIÓN DE LA PARTE QUERELLANTE RECURRIDA, JUAN   ARROYO   CAMACHO   Y   ALEJA   DEL   VALLE TRINIDAD, FUE HEREDADA POR LA PARTE AQUÍ RECURRENTE.**

**C.   ERRÓ   EL   TRIBUNAL   DE   APELACIONES   AL OBVIAR   EN   SU   SENTENCIA,   EL   CONSIDERAR   LA DETERMINACIÓN DEL TPI EN EL CASO DE HERENCIA, MARIA EUGENIA JOGLAR SUAREZ ET ALS VS. LIONEL FERNANDEZ CAPELLA, ET ALS, CIVIL NÚM. KAC 94-0957 ANTE EL TRIBUNAL DE PRIMERA INSTANCIA, SALA   SUPERIOR   DE   SAN   JUAN,   DE   QUE   EL RECURRENTE NO RESPONDE, HABIÉNDOSE ESTIPULADO LA RESPONSABILIDAD DEL RECURRENTE EN EL CASO DE HERENCIA.**

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver los asuntos traídos ante nuestra consideración.

II

Revocamos la Sentencia emitida por el Tribunal de Apelaciones, y devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez emite Opinión de Conformidad.  El Juez Asociado señor Rebollo López no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Arroyo Camacho y Aleja
del Valle Trinidad
          Recurrida

              v.

                                    CC-2006-205

La Sucn. de Ángel Joglar
Compuesta por María Juana
Suárez, et als
          Recurrida

José Antonio Joglar Suárez
          Peticionario

Opinión de Conformidad emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 7 de mayo de 2008.

Alega el peticionario que erró el Tribunal de Apelaciones al denegar la expedición del auto de *Certiorari*, por entender que su intervención desvirtuaría la naturaleza sumaria del procedimiento de reclamación laboral que pendía ante el foro de primera instancia. Tiene razón. Veamos.

La Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq*., según enmendada, en adelante Ley Núm. 2, creó un mecanismo procesal con el propósito de lograr una rápida consideración y adjudicación de querellas presentadas por empleados u obreros contra sus

patronos.[22]  La Ley Núm. 2 responde a una clara e inequívoca política pública establecida por el Estado que busca abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero.[23]  Reiteradamente hemos enfatizado que la esencia y médula del trámite fijado por dicho estatuto constituye precisamente el procesamiento sumario y expedito.[24]  En otras palabras, la naturaleza sumaria del procedimiento establecido en esta ley constituye su característica esencial.[25]

El alcance de la Ley Núm. 2 se extiende a varios estatutos laborales.  Entre estos, se encuentran los siguientes: (1) querellas por reclamaciones de salarios y beneficios; (2) las instadas por despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. 185(a) *et seq*; (3) las reclamaciones bajo el Art. 5A de la *"Ley de Compensaciones por Accidentes del Trabajo"*, Ley Núm. 45 de 18 de abril 1935, según enmendada, 11 L.P.R.A. secs. 1 *et seq*; (4) las reclamaciones al amparo del Art. 1 de la *"Ley Antidiscrimen"*, Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146; (5) y las reclamaciones al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, conocida como *"Ley de Represalias"*, 29 L.P.R.A. sec. 194 *et seq*.

---

[22] Ocasio Méndez v. Kelly Services, 2005 T.S.P.R. 4, 2005 J.T.S. 9, 163 D.P.R. ____ (2005); Lucero Cuevas v. The San Juan Star, 159 D.P.R. 494, 503-504 (2003).

[23] Ríos v. Industrial Optic, 155 D.P.R. 1, 10 (2001).

[24] *Íd.*

[25] *Íd.*, Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660 (1987).

La Ley Núm. 2 provee un procedimiento para así alcanzar los propósitos legislativos de proteger el empleo, desalentar el despido sin justa causa y proveer al obrero así despedido recursos económicos para su subsistencia mientras consigue un nuevo empleo.[26] Siendo el procedimiento sumario uno de carácter reparador, este tiene que interpretarse de forma liberal a favor del empleado.[27] Dicho procedimiento fue instituido en aras de remediar la desigualdad económica existente entre las partes al instarse una reclamación de este tipo.[28]

A tenor con los propósitos antes expuestos, el trámite procesal dispuesto por la Asamblea Legislativa, en la Ley Núm. 2, ciertamente es uno más oneroso para el patrono.[29] Por ejemplo, los términos para contestar la querella presentada por el empleado son más cortos, existen criterios estrictos para conceder una prórroga para contestar la querella y adicionales limitaciones sobre el uso de descubrimiento de prueba.[30] No obstante, la Ley Núm. 2 le concede al patrono las oportunidades básicas para defenderse, cumpliendo así con las garantías del debido proceso de ley.[31]

---

[26] Ocasio Méndez v. Kelly Services, *supra*, pág. 10.

[27] *Íd.*; Piñero Gonzalez v. A.A.A., 146 D.P.R. 890, 897 (1998).

[28] Lucero Cuevas v. The San Juan Star, *supra*, pág. 504.

[29] Ocasio Méndez v. Kelly Services, *supra*, pág. 10.

[30] *Íd.*

[31] *Íd.*, pág. 11; Landrum Mills Corp. v. Tribunal Superior, 92 D.P.R. 689, 692 (1965).

No obstante el carácter sumario de la Ley Núm. 2, no fue la intención del legislador imponer un trámite procesal inflexible e injusto para el patrono querellado.[32] La Ley Núm. 2 no puede ser interpretada ni aplicada en el vacío y, aun ante casos que parezcan ser iguales, en ocasiones, los hechos de los mismos requerirán tratamientos distintos en aras de conseguir un resultado justo.[33] Esto se traduce a que en ocasiones aplicaremos una disposición en forma enérgica, y en otras seremos más flexibles.[34]

En el pasado hemos resuelto que el foro de primera instancia, ante un oportuno planteamiento al respecto, tiene discreción para que, luego de hacer un análisis cuidadoso de la naturaleza de la reclamación y de los intereses involucrados, determine que la querella presentada por el obrero sea tramitada por la vía ordinaria.[35] Para que el Tribunal de Primera Instancia pueda hacer una determinación en torno a cual procedimiento es el adecuado, debe hacer un justo balance entre los intereses del patrono y los del obrero querellante, a la luz de las circunstancias especificas de las reclamaciones en la querella.[36]

---

[32] Ocasio Méndez v. Kelly Services, *supra*, pág. 11.

[33] *Íd.*

[34] *Íd.*; Valentín v. Housing Promoters, 146 D.P.R. 712, 716 (1998)

[35] Berríos v. González *et al.*, 151 D.P.R. 327, 340 (2000).

[36] *Íd.*, Ocasio Méndez v. Kelly Services, supra, pág. 11.

El que una parte meramente alegue que la reclamación instada en su contra es compleja no justifica la conversión del proceso en uno ordinario.[37] Por lo tanto, las partes deben exponer todas las circunstancias pertinentes del caso para que sean examinadas por el tribunal y de esta manera este pueda estar en posición de hacer una determinación sobre si encauza el procedimiento por la vía sumaria u ordinaria.[38] Inclusive, de entenderlo necesario, el foro de primera instancia podría celebrar una vista para dilucidar esta controversia.[39]

Ante un planteamiento oportuno al respecto, el foro de primera instancia, luego de hacer un análisis ponderado de los intereses de las partes en el caso y cuando la justicia así lo requiera, podrá ordenar que se tramite la reclamación por la vía ordinaria.[40] En dichos casos, limitamos nuestra función revisora a determinar si el Tribunal de Instancia ha abusado de su discreción al así actuar.[41]

La revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento bajo Ley Núm. 2, y por tal razón la facultad de revisar dichas

---

[37] Ocasio Méndez v. Kelly Services, *supra*, pág. 11.

[38] *Íd.*

[39] *Íd.*

[40] *Íd.*

[41] *Íd.*

resoluciones de los tribunales apelativos es limitada.[42]

Sobre el particular, en <u>Dávila, Rivera v. Antilles Shipping, Inc</u>, 147 D.P.R. 483, 496-497 (1999), sostuvimos lo siguiente:

> Es por ello que, aunque la legislación otorga a los tribunales apelativos-antes al Tribunal Supremo y en la actualidad al Tribunal de Circuito de Apelaciones- la facultad para revisar las resoluciones interlocutorias dictadas por los tribunales de instancia, entendemos que la naturaleza del procedimiento de la Ley Núm. 2 reclama que dicha facultad quede limitada en el caso de las resoluciones interlocutorias dictadas dentro de un procedimiento llevado al amparo de dicha ley. Con el objetivo de dar estricto cumplimiento al propósito legislativo de instaurar un procedimiento rápido y sumario de reclamación de salarios, *resolvemos* que nuestra facultad revisora de las resoluciones interlocutorias que se dicten en el seno de dicho proceso queda autolimitada de forma que nos abstendremos de revisarlas. De igual modo, el Tribunal de Circuito de Apelaciones deberá abstenerse de revisar dichas resoluciones.

> En consecuencia, la parte que pretenda impugnar tales resoluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido. De este modo se da cumplimiento a la médula del procedimiento analizado y, por otro lado, no queda totalmente desvirtuado el principio de economía procesal ya que, si tenemos en cuenta la rapidez con que sobrevienen los escasos eventos procesales previstos por la Ley Núm. 2 veremos que la parte podrá revisar en tiempo cercano los errores cometidos.

> **Ahora bien, la norma que hoy establecemos no es absoluta.** En aquellos casos en que la resolución interlocutoria que se pretenda impugnar haya sido dictada por el tribunal de instancia de forma *ultra vires*, sin jurisdicción, este Tribunal o el Tribunal de Circuito de Apelaciones-según corresponda- sí mantendrá y

---

[42] <u>Rodríguez v. Interactive Syst., Inc.</u>, 153 D.P.R. 469, 473 (2001); <u>Dávila, Rivera v. Antilles Shipping, Inc.</u>, 147 D.P.R. 483, 496-497 (1999).

ejercerá su facultad para revisarla vía *certiorari*.

\*\*\*

Así, pues, concluimos que, con el objetivo de salvaguardar la intención legislativa, autolimitamos nuestra facultad revisora, y la del Tribunal de Circuito de Apelaciones, en aquellos de resoluciones interlocutorias dictadas al amparo de la citada Ley Núm. 2 con excepción de aquellos supuestos en que la misma se haya dictado sin jurisdicción por el tribunal de instancia **y en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una "grave injusticia" (miscariage of justice)**(Énfasis suplido y citas omitidas)

En su Sentencia, el Tribunal de Apelaciones sostuvo que este no era un caso que ameritaba su intervención para revisar una orden interlocutoria. Sostuvo, además, que tampoco era el caso extremo que requería una intervención para evitar una grave injusticia. A base de lo anterior, el foro intermedio apelativo denegó el recurso de *"Certiorari"* presentado por el peticionario y devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Estamos de acuerdo con el peticionario en que la reclamación laboral de los querellantes *de facto* perdió su carácter sumario, para convertirse en un proceso ordinario. La reclamación de los querellantes fue originalmente presentada en el Tribunal de Primera Instancia allá para el 15 de junio 1995, en exceso de doce (12) años a la fecha de hoy. Desde entonces, se han suscitado innumerables trámites procesales, tales como, pero no limitado a,

presentación de dos (2) informes de conferencias de abogados, mociones de desestimación de parte y parte, solicitudes de demandas contra coparte y peticiones de *"Certiorari"* a foros apelativos, entre otros. Aunque el foro de primera instancia nunca manifestó explícitamente su intención de encausar la querella por la vía ordinaria, entendemos que, en efecto, perdió su carácter sumario debido al tiempo transcurrido desde su presentación original.

En el caso Dávila, Rivera v. Antilles Shipping, Inc., *supra*, sostuvimos que una querella al amparo de la Ley Núm. 2, presentada cinco (5) años antes había, "…perdido su esencia sumaria debido, precisamente, al tiempo que ha tomado la resolución final del asunto planteado en este recurso." Tomando en cuenta lo anterior, no albergamos duda alguna que un caso como el de marras, que se inició hace doce (12) años atrás, ha perdido, de facto, su esencia sumaria.

Somos del criterio que el foro intermedio apelativo erró al denegar la expedición de auto de *Certiorari*, por entender que su intervención desvirtuaría la naturaleza sumaria del procedimiento de reclamación laboral que pendía ante el foro de primera instancia. Resulta manifiesto que debido al tiempo que ha tomado resolver esta reclamación, la misma ha perdido su carácter sumario. Se tiene que tratar como una acción ordinaria, no siendo aplicables a ésta las disposiciones de la Ley Núm. 2.

Alega, además, el peticionario que el Tribunal de Apelaciones erró al resolver que la reclamación laboral de los querellantes fue heredada por el peticionario. El error señalado fue cometido. Veamos.

La sucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos.[43] La sucesión también significa las propiedades derechos y cargas que una persona deja después de su muerte, ora la propiedad exceda a las cargas, ora las cargas excedan a la propiedad, o bien si dicha persona ha dejado solamente cargas y ninguna propiedad.[44]

La herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte.[45] Los herederos suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones.[46] El derecho de un heredero a la herencia nace al ocurrir el fallecimiento de su causante, pudiendo él desde ese momento enajenar sus derechos y acciones en ella.[47]

En nuestro derecho sucesorio, al igual que en el español, el francés, y el romano, la herencia comprende las relaciones jurídicas activas y pasivas que componían el

---

[43] 31 L.P.R.A. sec. 2081.

[44] 31 L.P.R.A. sec. 2085.

[45] 31 L.P.R.A. sec. 2090.

[46] 31 L.P.R.A. sec. 2092.

[47] Torres v. Registrador, 75 D.P.R. 128 (1953).

patrimonio de la persona a la fecha de su muerte.[48] Son transmisibles por herencia, entre otros: los derechos patrimoniales; los derechos de socio en las sociedades de capitales; la cualidad de socio en las sociedades de personas; la acción para reclamar la filiación legítima; la acción para impugnar los actos o negocios jurídicos por el causante en fraude de la legítima; las diversas modalidades de la propiedad industrial; el derecho de autor; las obligaciones, salvo las de carácter personalísimo o cuando se trata de una prestación infungible; la propiedad funeraria; el derecho del causante a obtener indemnización por los daños y perjuicios que le hayan ocasionado en vida.[49]

No son transmisibles por herencia: las relaciones jurídicas de carácter público, las personalísimas y las de contenido patrimonial de duración vitalicia; los derechos reales de carácter vitalicio; algunos derechos de crédito; los derechos y deberes que integran las relaciones familiares, excepto los de contenido exclusivamente patrimonial y transmisible; los derechos que emergen de un contrato de arrendamiento; los derechos obtenidos como beneficiario en virtud de la legislación de accidentes del trabajo; el derecho al nombre; las cantidades que el

---

[48] Sucn. Álvarez Crespo v. Secretario de Justicia, 150 D.P.R. 252, 266 (2000).

[49] Íd., págs. 268-269; J. Puig Brutau, Fundamentos de Derecho Civil, 2da. ed., Barcelona, Ed. Bosch, 1975, T. V, Vol I., págs. 44-63.

asegurador deba entregar al asegurado, en cumplimiento del contrato.[50]

Sobre este particular el tratadista Efraín González Tejera en su libro <u>Derecho de Sucesiones</u>, San Juan, Editorial de la Universidad de Puerto Rico, 2001, Tomo I, páginas 193-194, expresa lo siguiente:

> La consecuencia principal de la aceptación pura y simple de la herencia es la responsabilidad del heredero frente a los acreedores del causante, no sólo con el valor de los bienes recibidos, sino también con los suyos propios…Esta seria y mucha veces peligrosa responsabilidad es solidaria frente al acreedor, esto es, el acreedor insoluto puede cobrar la totalidad de lo que el causante le debía a cualquiera de los herederos que aceptaron la herencia en forma pura y simple, aunque nada hubiera recibido del caudal. Sin embargo, el heredero demandado puede traer al pleito los demás coherederos, remedio que, en muchos casos resulta ineficaz. Si el demandado no trae el litigio a sus coherederos como terceros demandados, tiene todavía la acción de repetición contra los demás coherederos, si pagó la sentencia. Pero en estos casos se produce la mancomunidad, es decir, que la responsabilidad por el pago hecho al acreedor se prorratea entre coherederos puros y, si uno de ellos resultara insolvente, los demás asumirían la porción a que éste le correspondiera pagar, y retendrían todos el derecho a reclamarle, en su día, lo que no llegó a pagar, por aquello de que del cumplimiento de las obligaciones responde el deudor con sus bienes presentes y futuros.
>
> En nuestro sistema de Derecho la muerte del deudor no produce, automáticamente, el vencimiento de sus obligaciones ni requiere que se presente al albacea o administrador judicial como condición para cobrarlos. Por ello, en nuestro medio puede darse la situación en la que, concluida la partición y hasta varios años después, se presenten acreedores a cobrar sus acreencias.

---

[50] *Íd.*

El Artículo 954 del Código Civil de Puerto Rico[51], dispone lo siguiente:

Entiéndase aceptada la herencia:

> (1) **Cuando el heredero vende, dona o cede su derecho a un extraño, a todos sus coherederos o a alguno de ellos.**
>
> (2) Cuando el heredero la renuncia, aunque sea gratuitamente, a beneficio de uno o más de sus coherederos.
>
> (3) Cuando la renuncia por precio a favor de todos sus coherederos indistintamente; pero si esta renuncia fuere gratuita y los coherederos a cuyo favor se haga son aquéllos a quienes debe acrecer la porción renunciada, no se entenderá aceptada la herencia. (Énfasis suplido)

La enajenación de la participación del heredero en una herencia implica, necesariamente, que la aceptó.[52] Sobre este asunto, nos comenta el profesor Efraín González Tejera lo siguiente:

> No puede existir acto de aceptación de herencia más claro que enajenar a título oneroso lo que al vendedor pueda corresponder en la herencia de su causante. El artículo 954 dispone en parte que se entiende aceptada la herencia cuando el heredero vende, dona o cede su derecho a un extraño, a todos sus coherederos o alguno de ellos. Ceder por precio o donar el derecho hereditario son actos que no pueden realizare sino con la condición de heredero. Enajenar toda la herencia del causante o parte de ella equivale a una aceptación tácita del derecho a heredar.[53]

El profesor Efraín González Tejera define el legado como una atribución que hace el testador en favor de una o

---

[51] 31 L.P.R.A. sec. 2782.

[52] Efraín González Tejera, <u>Derecho de Sucesiones</u>, *supra*, pág. 304.

[53] *Íd.*

varias personas, determinadas o determinables, por la cual ordena a uno o a más de sus herederos, al albacea o, inclusive, a otro legatario, que a su debido tiempo proceda a ceder o a hacer al legatario un derecho, una cosa o un servicio, o entregar una fracción del activo neto hereditario.[54]   El legado constituye una transmisión gratuita de elementos del activo del patrimonio del causante, del heredero o de otro legatario a favor del beneficiario.[55]   Los tratadistas José Luis Lacruz Berdejo y Francisco Sancho Rebullida, definen, al legado, como un "regalo póstumo".[56]

Se define legatario como aquel a quién el testador le dispensa algún beneficio, susceptible o no de valoración patrimonial, teniendo presente que el testador puede siempre someter dicha atribución a las incidencia de la condición, del término o de la carga o modo.[57]

Cuando el legado es de cosa específica y determinada, el legatario adquiere su propiedad desde que el testador muere, y hace suyo los frutos o rentas, pero no las rentas devengadas y no satisfechas antes de la muerte.[58]   Sin embargo, el legatario no puede ocupar por su propia

---

[54] Efraín Gonzalez Tejera, Derecho de Sucesiones, San Juan, Editorial de la Universidad de Puerto Rico, 2001, Tomo II, pág. 390.

[55] Íd., pág. 391.

[56] José Luis Lacruz Berdejo y Francisco Sancho Rebullida, Elementos de Derecho civil, Barcelona, Editorial Bosch, 1988, pág. 28.

[57] Íd.

[58] 31 L.P.R.A. sec. 2493.

autoridad la cosa legada, sino que debe pedir su entrega y posesión al heredero o albacea cuando éste se halle autorizado para darla.[59] La cosa legada deberá ser entregada con todos sus accesorios y en el estado en que se halle al morir el testador.[60]

Antes de adentrarnos en la controversia ante nos, es menester puntualizar la relación cronológica de algunos eventos del caso. Primero, el causante Ángel Joglar Suárez falleció el 21 de octubre de 1978, habiendo otorgado testamento ológrafo, en donde instituyó como herederos a sus cuatro (4) hijos en la legítima forzosa y designó como legatarios a tres (3) de sus hijos, en inmuebles específicos incluyendo el "Parking Santa Rita". Segundo, se excluyó al peticionario de dicho legado. Tercero, el 12 de diciembre de 1980, el peticionario vendió su participación hereditaria en el caudal del causante Ángel Joglar Suárez a sus dos hermanas. Cuarto, el 15 de junio de 1995, los querellantes presentaron en contra de la Sucesión Ángel Joglar Suárez, una reclamación de salarios que comprendían el período de **1985 a 1995**.

El causante Ángel Joglar Suárez designó como legatarios a las hermanas y hermano del peticionario con cargo al tercio de mejora y libre disposición en inmuebles específicos, entre los cuales se encontraba el establecimiento comercial "Parking Santa Rita". El peticionario fue expresamente excluido del legado del cual

---

[59] 31 L.P.R.A. sec. 2496.

[60] 31 L.P.R.A. sec. 2494.

surge la causa de acción objeto de la reclamación de los querellantes. Por ende, no le fueron transmitidos los derechos ni las obligaciones del bien dejado en legado a sus demás hermanos, por lo que no tiene obligación alguna frente a la reclamación de salarios de los querellantes.

La reclamación de salarios de los querellantes tampoco constituiría una obligación que heredó el peticionario del causante Ángel Joglar Suárez, puesto que la misma se circunscribe a diez (10) años con anterioridad a 1995, fecha en que los querellantes cesan como empleados en el "Parking Santa Rita". La reclamación comprende el periodo de 1985 a 1995. El peticionario había vendido antes del 1985 su participación a sus hermanas, liquidándose su participación hereditaria en la Sucesión Ángel Joglar Suárez el día 12 de diciembre de 1980. Para el 1985, el peticionario no era parte de la Sucesión Ángel Joglar Suárez, pues para esa fecha él ya había vendido su participación en el inmueble Parking Santa Rita.

Durante el periodo de 1985 a 1995 el peticionario nunca administró o se benefició de las operaciones del "Parking Santa Rita", ya que el mismo era administrado por su madre, hermanas y hermano. Desde el 1980, el peticionario no era titular del "Parking Santa Rita", pues el mismo era propiedad de una comunidad de bienes compuesta por la señora María Juana Suárez, viuda de Joglar, y de María Margarita, María Eugenia y Ángel, todos de apellido Joglar Suárez.

De lo anterior surge que la causa de acción de los querellantes, presentada el 15 de junio de 1995, comprende un periodo posterior a la venta de la participación del peticionario en la herencia de su padre (1980) y en su consecuencia responden a ella únicamente los miembros de la Sucesión Ángel Joglar Suárez que eran los propietarios y operaron el "Parking Santa Rita" desde 1985 a 1995. Es forzoso concluir que las reclamaciones de los querellantes no eran imputables al peticionario, ya que él no fue incluido como legatario en dicho activo y sobre el resto del caudal relicto solo adquirió derechos y obligaciones durante el período entre el fallecimiento del causante Ángel Joglar Suárez (1978) y la venta de su participación en la herencia (1980).

Abona más a nuestra posición el hecho que en el "*Informe de Conferencia Preliminar entre Abogados*", y en su correspondiente enmienda, las partes estipularon que el peticionario no era miembro de la Sucesión Ángel Joglar Suárez. El "*Informe de Conferencia Preliminar entre Abogados*", dispone lo siguiente:

> II. Las partes coquerelladas estipulan los siguientes hechos que no están en controversia entre ellos:
>
> 1. El coquerellado José Antonio Joglar no es miembro de la Sucesión de Angel Joglar Suárez, según surge de la Escritura Núm. 5 otorgada el 12 de diciembre de 1980, ante el Notario Público Ramón Lomba Miranda.

La Regla 5.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III R.5.2, establece que pueden estipularse entre las partes los hechos que dan lugar a una controversia de

derecho.  Hemos resuelto, que las estipulaciones en los hechos obligan tanto a las partes como al Juez.[61]  Lo que las partes aceptan dentro del curso procesal de un caso civil,--i.e. en la contestación a la demanda, **conferencia con antelación al juicio**, estipulaciones, es incontestable salvo que el Tribunal permita enmienda a las mismas.[62]  La estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención a ella.[63]

Ahora bien, con relación a la Sucesión de la señora María Juana Suárez, viuda de Joglar, la secuencia de los hechos es la siguiente.  <u>Primero</u>, el causante Ángel Joglar Suárez falleció el 21 de octubre de 1978.  <u>Segundo</u>, por tratarse de un bien ganancial, la participación de la señora María Juana Suárez, viuda de Joglar, en el "Parking Santa Rita" era de 50%.  <u>Tercero</u>, el 15 de junio de 1995, los querellantes presentaron una querella en contra de la Sucesión Ángel Joglar Suárez, una reclamación de salarios que comprendían el período de **1985 a 1995.**  <u>Cuarto</u>, el 1 de enero de 1997, falleció la señora María Juana Suárez, viuda de Joglar, habiendo manifestado su última voluntad mediante testamento ológrafo, en esencia, idéntico en las cláusulas esenciales a las de su finado esposo.

---

[61] <u>Sepúlveda Ríos v. Departamento de Salud</u>, 145 D.P.R. 560, 571 (1998).

[62] <u>Díaz Ayala, et. al, v. E.L.A.</u>, 153 D.P.R. 675, 693 (2001).  Véase además, Chiesa, Ernesto L., Tratado de Derecho Probatorio; Reglas de Evidencia de Puerto Rico y Federales. Tomo II, pág. 655, Publicaciones JTS, 2000.

[63] *Íd.*

Al igual que el causante Ángel Joglar Suárez, la señora María Juana Suárez, dejó en legado a las hermanas y hermano del peticionario, los inmuebles donde ubicaba la operación del "Parking Santa Rita". Activos del cual surge la causa de acción objeto del caso. El peticionario fue excluido de este legado. A base de esto, es forzoso concluir que las reclamaciones de los querellantes no eran imputables al peticionario, ya que él no fue designado como legatario de dicho activo en la herencia de su señora madre. No responde frente a la reclamación de salarios de los querellantes

Resolvemos que el foro intermedio apelativo erró al resolver que la reclamación de la parte querellante fue heredada por el peticionario.

En tercer lugar examinaremos el planteamiento sobre impedimento colateral por sentencia señalada en el error C.

Alega el peticionario que el Tribunal de Apelaciones debió tomar en cuenta la determinación emitida por el Tribunal de Primera Instancia, Sala de San Juan en un litigio anterior (KAC 94-0957) sobre división de herencia entre el peticionario y sus hermanas. El peticionario plantea que se debió tener en cuenta que aplicaba la doctrina de impedimento colateral por sentencia. No le asiste la razón. Veamos.

El peticionario, sus hermanas, y madre se envolvieron en un litigio sobre división de herencia desde el 1994. Dicho litigio finalizó con una estipulación entre las partes acordada en vista celebrada el 19 de marzo de 2002.

El peticionario vendió su participación en la herencia de su madre a sus hermanas. Además, se aprobó una reserva de $15,000, que excluyó al peticionario, para responder a la querella laboral presentada por los querellantes.

Después de varios incidentes procesales, el 26 de enero de 2004, el peticionario presentó ante el Tribunal de Primera Instancia, *"Réplica a 'Moción Solicitando el Tribunal no Emita Pronunciamiento por Falta de Jurisdicción"*.[64] Solicitó, entre otras cosas, que se declarara con lugar el pedimento contenido en una *"Solicitud de Ampliación de Minuta y/o Reconsideración"*[65] presentada el 10 de diciembre de 2003 y/o se determinara que no tenía responsabilidad en el caso laboral iniciado por los querellantes. La solicitud de ampliación de minuta, solicitó que el foro de primera instancia interpretara la estipulación entre las partes que dio finalidad al litigio de herencia entre ellos. Solicitó, además, que se estableciera cual era el fin destinado de la reserva laboral que formó parte de la estipulación.

El 13 de abril de 2004, el Tribunal de Primera Instancia, emitió *"Orden"* indicando lo siguiente:

> 1. Replic a Moción Solicitando el Tribunal No Emita…(Lcda. Déme) Orden. **"Como se Pide."**[66]
> …
>
> (Énfasis Suplido)

---

[64] Apéndice del recurso de *Certiorari*, págs. 261-264.

[65] *Íd.*, págs. 265-268.

[66] *Íd.*, págs. 259-260.

El peticionario entiende que la Orden del Tribunal de Primera Instancia de 13 de abril de 2004, definió la responsabilidad de éste en la querella laboral, a base de la Sentencia por estipulación, ya final y firme, dictada por acuerdo entre las partes. Sostiene que al acoger la posición consignada en los escritos del 26 de enero de 2004 y 10 de diciembre de 2003, en los cuales se expresaba que mediante la estipulación que surge de la sentencia en dicho caso, la responsabilidad total del pago del litigio laboral le correspondía totalmente a sus hermanos. Alega, que erró el foro intermedio apelativo al no aplicar la doctrina de impedimento colateral por sentencia, ya que la controversia sobre la responsabilidad del peticionario en el caso laboral, ya se había resuelto en el caso de herencia.

Al revisar el expediente, nos percatamos, en efecto, que el peticionario solicitó en el pleito de herencia que se determinara la responsabilidad de su parte en el pleito laboral. No obstante, no surge concluyentemente que la Orden del Tribunal de Primera Instancia del 13 de abril de 2004 haya adjudicado la responsabilidad o ausencia de ella que pueda tener el peticionario ante la reclamación de los querellantes. El "Como se pide", no es suficiente para acoger la teoría del peticionario de que existe impedimento colateral por sentencia.

Efraín E. Rivera Pérez
Juez Asociado